UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUDY R. SMITH,

                Plaintiff,

        v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                Defendant.
_____

**DECISION
and
ORDER**

**18-CV-148F**
(**consent**)

APPEARANCES:         LAW OFFICES OF KENNETH R. HILLER, PLLC
                             Attorneys for Plaintiff
                             KENNETH R. HILLER, and
                             ELIZABETH ANN HAUNGS, of Counsel
                             6000 North Bailey Avenue, Suite 1A
                             Amherst, New York 14226

                             JAMES P. KENNEDY, JR.
                             UNITED STATES ATTORNEY
                             Attorney for Defendant
                             Federal Centre
                             138 Delaware Avenue
                             Buffalo, New York 14202
                                      and
                             KRISTINA DANIELLE COHN,
                             Special Assistant United States Attorneys, of Counsel
                             Social Security Administration
                             Office of General Counsel
                             26 Federal Plaza – Room 3904
                             New York, New York 10278
                                      and
                             DENNIS J. CANNING, and
                             SCOTT C. KELLER,
                             Special Assistant United States Attorneys, of Counsel
                             Social Security Administration
                             Office of General Counsel
                             601 E. 12TH Street, Room 965
                             Kansas City, Missouri 64106

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 7). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on July 6, 2018 (Dkt. 8), and by Defendant on September 28, 2018 (Dkt. 13).

## BACKGROUND

Plaintiff Judy R. Smith ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on March 31, 2014, for Social Security Disability Insurance under Title II of the Act ("SSDI" or "disability benefits"). Plaintiff originally alleged she became disabled on June 25, 2010, based on schizophrenia, chronic obstructive pulmonary disease ("COPD"), diabetes, peripheral artery disease ("PAD"), bipolar disorder, impulsivity, and 2e.[2] AR[3] at 10, 179-82. Plaintiff's application initially was denied on July 17, 2014, AR at 95-98, and at Plaintiff's timely request, on August 23, 2016, a hearing was held in Buffalo, New York, before administrative law judge Timothy M. McGuan ("the ALJ). AR at 32-69. Appearing and testifying at the

---

[2] The acronym "2e" stands for "twice exceptional" and refers to individuals considered who are both gifted and have a learning, emotional, behavioral, or social issue, thus falling into the exceptional statistical range for their cognitive, academic, or creative abilities and potential, yet also into the lower statistical range in their deficit area. *See* Aurélie Boschi et al., *From High Intellectual Potential to Asperger Syndrome: Evidence for Differences and a Fundamental Overlap – a Systematic Review*, Frontiers in Psychology, Oct. 20, 2016, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5071629, last visited June 19, 2019.
[3] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on May 7, 2018 (Dkt. 5).

hearing were Plaintiff, and her then attorney, Dennis Gaughan, Esq. ("Gaughan"), Plaintiff's witness Kishia Douglas ("Douglas"), and vocational expert ("VE") Joey Kilpatrick appeared and testified by telephone. During the administrative hearing, the ALJ mentioned the record was devoid of any evidence supporting any disabling condition after May 2014, AR at 34, 59, and the ALJ agreed to hold the record open for 25 days for Plaintiff to submit more evidence. AR at 68-69. By letter to Gaughan dated August 29, 2016, the ALJ granted a request to extend the submission deadline for the additional evidence to September 27, 2016, and specifically identified the additional records, later determined to be missing, discussed at the administrative hearing, AR at 229, but no such records were ever received.

On January 20, 2017, the ALJ issued a decision denying Plaintiff's claim, AR at 7-24 ("the ALJ's decision"), which Plaintiff appealed to the Appeals Council. AR at 148-50. The ALJ observed Plaintiff's prior disability benefits claim, filed April 5, 2011, was denied by final decision on December 17, 2012, requiring the ALJ to limit the period of consideration for Plaintiff's present claim to the time period commencing December 18, 2012, thus amending Plaintiff's disability onset date to December 18, 2012. AR at 10, 12, 35. By letter to Plaintiff's new attorney, Jeanne Murray, Esq., dated March 23, 2017, Plaintiff was given 25 days to submit new evidence to the Appeals Council, AR at 25-26, but none were submitted. On November 27, 2017, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-6. On January 26, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On July 6, 2018, Plaintiff moved for judgment on the pleadings (Dkt. 8) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 8-1) ("Plaintiff's Memorandum").  On September 27, 2018, Defendant moved for judgment on the pleadings (Dkt. 13) ("Defendant's Motion"), attaching Defendant's Brief in Support of Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 13-1) ("Defendant's Memorandum").  Filed on November 26, 2018, was Plaintiff's Reply to Commissioner's Memorandum in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 16) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is REMANDED for further proceedings in accordance with this Decision and Order.

# **FACTS**[4]

Plaintiff Judy R. Smith ("Plaintiff" or "Smith"), born September 8, 1956, was 56 years old as of December 18, 2012, her amended alleged disability onset date ("DOD"), and 60 years old as of January 20, 2017, the date of the ALJ's decision.  AR at 12, 20, 179.  Plaintiff was a high school graduate, attended college and had two Associate's degrees, one in accounting and the other in business administration, AR at 36-37, and has previously worked as a laborer with the Buffalo Municipal Housing Authority.  AR at

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

4

184. Plaintiff is not married[5] and has no children, AR at 152, and was evicted from her apartment for nonpayment of rent. AR at 42.

From May 9, 2013, though July 26, 2016, Plaintiff received treatment for her COPD, diabetes, and PAD through Urban Family Practice, P.C. ("Urban") in Buffalo, New York, where her primary care physicians were Raul Vazquez, M.D. ("Dr. Vazquez"), and Jesslyn Perry, M.D. ("Dr. Perry"). AR at 291-552, 587-611, 667-690, 741-820). On November 15, 2013, Dr. Vazquez completed an application for Plaintiff to obtain a disabled parking permit, indicating Plaintiff was temporarily disable by COPD. AR at 500. On June 10, 2014, Plaintiff underwent a physical examination by podiatrist Joseph A. Sciandra, D.P.M. ("Dr. Sciandra"), who assessed Plaintiff with a diabetes-related foot deformity for which extra depth shoes with inserts were recommended. AR at 287-88.

From November 10, 2010 until at least May 19, 2014, Plaintiff began receiving psychiatric treatment at the Monsignor Carr Institute ("MCI"), a mental health outpatient treatment facility in Buffalo, New York, with a psychiatric specialist, John Napoli, M.D. ("Dr. Napoli"), who diagnosed Plaintiff with major depressive disorder, severe, recurrent, with psychotic features, and throughout the course of his treatment prescribed anti-depressant medications Cymbalta, Lexapro, anti-psychotic medication Abilify, and anxiety medication Kloponin. AR at 258-85. Plaintiff also saw other counselors at MCI, including Jenna Grinnell. AR at 620. On October 10, 2014, one Barbara Griesmann ("Griesmann"), placed a call from MCI to Crisis Services Helpline ("Crisis Services")

---

[5] The court notes that at a March 5, 2015 Initial Psychiatric Assessment at Jaffri Medical Associates, LLC, Plaintiff reported having been married three times, and most recently divorced five years earlier, and had made violent threat against her ex-husbands. AR at 563.

requesting Plaintiff, as a mentally ill person, be taken into custody based on increased impulsivity, dangerous behavior, aggressiveness, agitation, poor insight, forgetfulness and severe short-term memory loss, non-compliance with medications, and delusional thought content and hallucinations including the belief that ghosts inside her home were stealing from her. AR at 618-21. Plaintiff underwent a Crisis Services visit, for which the related report indicates Plaintiff carried a wrench and screwdriver to use as weapons, left her home at all hours without remembering why, was knocking on neighbors' doors in the middle of the night asking for cigarettes, reported seeing a ghost in her home, was increasingly agitated, aggressive, and physical with her family, and noncompliant with treatment. AR at 623-24. Plaintiff was admitted to Erie County Medical Center ("ECMC"), under N.Y. Mental Hygiene Law ("N.Y. Mental Hyg. Law") § 9.45 (McKinney's 2005), authorizing emergency admissions for immediate observation, care and treatment of a person with mental illness, AR at 831, and was diagnosed with dementia and schizophrenia. AR at 836.

From November 23, 2014 to December 3, 2014, Plaintiff was admitted to ECMC, pursuant to N.Y. Mental Hyg. Law § 9.39 ("McKinney's 1985), authorizing emergency admissions for immediate observation, care, and treatment of a person with mental illness who is threatening self-harm or harm to others. AR at 636. Upon admission, Plaintiff's diagnosis included schizophrenia spectrum disorder and cognitive disorder, with Plaintiff reported as having been non-compliant with treatment following her cousin's death, attempting to attack her sister with a baseball bat, and problems with "Diane," an ex-husband's girlfriend whom Plaintiff reportedly wanted to "fight and kill," but then indicated she did not want to harm but only to "stomp her face in, over and

over, because she needs to learn," and later decided to "have one of my people do it for me because I got medical problems." AR at 636-50. Plaintiff reported an increase in auditory hallucinations and agitation, and exhibited cognitive decline with poor executive and memory functioning. AR at 639-40. In January 2015, Plaintiff again physically fought with her sister. AR at 628.

      Plaintiff switched from receiving mental health treatment from MCI to Jaffri Medical Associates, LLC, in Amherst, New York, where Plaintiff underwent an initial psychiatric assessment by Qasim Syed Jaffri, D.O., M.B.A. ("Dr. Jaffri"), on March 5, 2015, when Plaintiff complained of delusional thought processes. AR at 562-65. In the mental status examination report, Dr. Jaffri reported Plaintiff was alert, oriented to place and situation, quite impulsive, intrusive, and made numerous interruptions during the evaluation, became agitated with Kishia who accompanied Plaintiff, had delusional thought processes, appeared to be responding to internal stimuli during the evaluation, made telephone calls in the middle of the night to her primary care physician and family members and could not understand why such behavior was not acceptable, was without insight into her impairments and intrusiveness including a past event when the police were called after Plaintiff almost broke a neighbor's window trying to speak with the neighbor, and exhibited significant memory difficulties. AR at 563-64. Dr. Jaffri diagnosed schizoaffective disorder by history, primarily bipolar type, and cognitive disorder, not otherwise specified, and treatment plan included an evaluation for intensive case manager and medications for COPD and psychiatric conditions. AR at 564. Upon returning to Dr. Jaffri on April 29, 2015, Plaintiff showed only "mild improvement," and continued to report agitation, anhedonia, irritability, nervousness,

uncontrollable hostility, suspiciousness, unusual thoughts, and excessive worry. AR at 566. Plaintiff reported similar symptoms on June 18, 2015, and August 20, 2015, with Plaintiff describing "no real pattern" to her symptoms. AR at 569-74. On November 17, 2015, Dr. Jaffri reported Kishia estimated Plaintiff could get violent, was argumentative, and agitated about three times a week. AR at 575-76. Plaintiff had moved to senior housing in June 2015, but did not receive any services there. AR at 575. Dr. Jaffri assessed Plaintiff as "totally and completely disabled due to psychosis and unable to keep or maintain gainful employment." AR at 576.

Plaintiff's sister, Hazel, has power of attorney over Plaintiff's funds which Plaintiff is unable to handle. AR at 41-42, 48. Plaintiff can drive but does not have a vehicle, is afraid of getting lost using public transportation, and and relies on Keisha for transportation including to doctor appointments and to the administrative hearing. AR at 43-44, 46-47, 48-49. Plaintiff last drove in 2013 to a local shopping mall, but when leaving the mall, was unable to find her vehicle in the parking lot, requiring the mall security officer drive her around to find it. AR at 48-49. Plaintiff has a visiting nurse stop by every day to give her medications which Plaintiff is unable to keep track of, including medications for schizophrenia and an insulin shot for diabetes. AR at 44-45. Although Plaintiff testified at the administrative hearing that the visiting nurse stopped coming the previous week, AR at 44, Kishia testified Plaintiff still receives visiting nurse services, including that morning, and that the visiting nurse was necessary because Plaintiff was often difficult about taking her medications. AR at 47. Plaintiff currently lived alone, but her family was in the process of moving Plaintiff in with her sister Debbie because they were uncomfortable with Plaintiff living on her own because

Plaintiff, who is a heavy smoker, falls asleep smoking and with the stove on, and Plaintiff did not always let the visiting nurse in for her medications, including for her paranoid schizophrenia and insulin, and her blood sugar would be dangerously high. AR at 50-54. Kishia testified Plaintiff has been evicted several times after confrontations with neighbors. AR at 51-52.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.    Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

     In the instant case, the ALJ found that Plaintiff met the Act's insured status requirement for SSDI through December 31, 2015, AR at 12, Plaintiff has not engaged in substantial gainful activity since December 18, 2012, her amended alleged disability onset date, *id.*, Plaintiff suffers from the severe impairments of diabetes mellitus, COPD, schizoaffective disorder, and major depressive disorder, AR at 12-13, but that additional

impairments, including incontinence, hypertension, dizziness, and left leg PAD, do not have more than a minimum impact on Plaintiff's ability to perform basic work activities and, thus, are non-severe impairments. AR at 13. The ALJ further found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1, AR at 13-15, and that Plaintiff retains the RFC to perform medium work except that she cannot understand, remember, or carry out detailed and complex tasks, can occasionally interact with the public, is not limited in interacting with co-workers or supervisors, and can tolerate occasional exposure to respiratory irritants such as fumes, dust or odors, AR at 15-18, including her past relevant work as an office helper, AR at 18-20, such that Plaintiff is not disabled as defined under the Act. *Id.* at 20.

In support of her motion, Plaintiff argues the ALJ erred at step two by failing to consider her dementia and cognitive disorder, Plaintiff's Memorandum at 11-17, failed to properly develop the record despite acknowledging at the administrative hearing the record was not complete, *id.* at 17-19, such that an obvious gap in the record existed, *id.* at 19-20, especially with regard to the home health services Plaintiff received, *id.* at 20-22, as well as Plaintiff's physical RFC to perform medium work, *id.* at 20-24, and mental RFC despite her mental impairments. *Id.* at 24-25. Defendant argues the ALJ properly evaluated Plaintiff's mental impairments, properly developed the record, and properly considered the opinion evidence in assessing Plaintiff's RFC. Defendant's Memorandum at 15-26. In reply, Plaintiff reiterates that remand is warranted based on the harmful error committed when the ALJ, at step two, ignored Plaintiff's dementia and

cognitive disorder, Plaintiff's Reply at 1-4, as well as based on gaps in the record created by a myriad of insufficiencies in the evidence.  *Id.* at 4-8.

**Dementia and Cognitive Disorder**

Plaintiff argues that despite repeatedly being diagnosed with dementia and a cognitive disorder, including by Plaintiff's treating physicians Dr. Jaffri and Dr. Vazquez, the ALJ omitted these medically determinable impairments at step two, requiring remand.  Plaintiff's Memorandum at 11-17.  Defendant maintains the record fails to demonstrate any diagnosis of dementia other than by Dr. Jaffri in the context of a "rule out diagnosis," and by Drs. Perry and Vazquez who, despite being treating physicians, are not mental health specialists.  Defendant's Memorandum at 20-22.  In reply, Plaintiff argues Dr. Vazquez "firmly diagnosed dementia" in September 2014, for which Plaintiff was prescribed two medications, Plaintiff's Reply at 1-2, and that Plaintiff was also diagnosed with dementia or cognitive disorder when she presented for emergency hospital treatment on October 11, 2014 and November 23, 2014, *id.* at 2, further asserting Defendant concedes the error, but maintains it was harmless because the ALJ considered Plaintiff's schizoaffective disorder to be "dementia-like."  *Id.* at 3-4.  A plain reading of the record establishes the ALJ committed error warranting remand when he failed to consider Plaintiff's dementia and cognitive disorder diagnoses at step two.

Relevantly, the administrative record establishes Plaintiff was diagnosed with dementia at least three times, AR at 771 (March 9, 2015); AR at 749 (September 24, 2014); and AR at 836 (October 11, 2014), and with a cognitive disorder at least twice, AR at 636 (November 23, 2014); and AR at 564 (March 5, 2015).  Contrary to Defendant's argument, the ALJ's consideration of Plaintiff's schizoaffective disorder at

step two to be "dementia-like" insofar as delusions and hallucinations are part of the diagnostic criteria for schizoaffective disorder, Defendant's Memorandum at 21, under the Diagnostic and Statistical Manual of Mental Disorders (5th ed.) ("DSM-5), dementia is categorized as a neurocognitive disorder, DSM-5 at 591, whereas a schizoaffective disorder is a psychotic and mood disorder. *Id.* at 87. Accordingly, the ALJ's consideration of Plaintiff's schizoaffective disorder did not include Plaintiff's dementia and cognitive disorders. Furthermore, such error cannot be considered harmless insofar as the ALJ, in addition to failing to consider the dementia and cognitive disorder diagnoses as step two, also failed to include such impairments in the disability analysis beyond step two. *See, cf., Reices-Colon v. Astrue*, 523 Fed.App'x 796, 798 (2d Cir. May 2, 2013) (finding harmless error where ALJ erred by excluding at step two of the disability analysis severe impairments of anxiety and panic attacks, but considered such impairments in evaluating the remaining disability analysis steps). Nor does the fact that several of the dementia and cognitive disorder diagnoses were made by Drs. Vazquez and Perry, both general practitioners and not mental health specialists, support the ALJ's failure to consider them, as Defendant argues. Defendant's Memorandum at 20-21. Significantly, Defendant references no authority for this novel argument which is contrary to both the relevant regulation, 20 C.F.R. § 404.1502(a)(1) and (2) (defining "acceptable medical sources" to include only a licensed physician or licensed psychologist), as well as to SSR 06-03p,[7] 2006 WL 2329939 (Aug. 9, 2006) (considering licenses physicians and psychologists as "acceptable medical sources"

---

[7] "SSR" is the acronym for "Social Security Rulings" which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. Such rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

whose medical opinions may be entitled to controlling weight). Moreover, Plaintiff was prescribed two dementia medications including Aricept by Dr. Napoli, AR at 564, and Exelon by Dr. Perry. AR at 771. The ALJ's failure to consider Plaintiff's repeatedly diagnosed dementia and cognitive disorders at step two thus requires remand.

**Sufficiency of the Record**

Plaintiff does not specifically challenge the ALJ's findings at any of the four remaining steps of the five-step disability analysis, but argues the ALJ, despite being aware the record contained no evidence of any medically-determinable impairment after May of 2014, advising he would not make a decision until the record was complete, and asking Plaintiff's prior legal representative to provide such evidence, nevertheless rendered the ALJ decision on the incomplete administrative record, and thus violated his independent duty to develop the record. Plaintiff's Memorandum at 17-25. According to Plaintiff, the missing records resulted in an obvious gap in the record, *id.* at 19-22, the record is devoid of any medical opinion regarding Plaintiff's RFC, *id.* at 22-24, and the ALJ's "very minimal mental RFC" is therefore unsupported by medical expert opinion. *Id.* at 24-25. For example, John Napoli, M.D. ("Dr. Napoli"), a psychiatry specialist who treated Plaintiff at Monsignor Carr Institute beginning in November 2010, and diagnosed Plaintiff with major depressive disorder, severe, recurrent, with psychotic features, opined on May 10, 2014 that Plaintiff's mental illness rendered her unable to work. AR at 258. The ALJ, however, discounted this opinion because no treating records of Dr. Napoli are in the record. AR at 17.

Generally, the ALJ's duty to develop the record is satisfied where, as here, the ALJ keeps the record open to receive further evidence after the administrative hearing

15

but the Plaintiff fails to provide such evidence nor requests the ALJ's assistance in obtaining the records. *See Jordan v. Comm'r of Soc. Sec.*, 142 Fed.Appx. 542, 543 (2d Cir. Sept. 8, 2005) (holding ALJ did not fail to discharge duty to develop the record where the ALJ, despite not contacting or obtaining records from a treating physician the plaintiff mentioned at the administrative hearing, kept the record open to permit the records to be provided by the plaintiff's counsel who volunteered to do so, and the ALJ later contacted counsel to remind the evidence had not yet been received, and that a decision would be made on the existing record if such evidence were not timely received). In the instant case, at the commencement of the administrative hearing, the ALJ mentioned the record was devoid of any evidence supporting any disabling condition after May 2014, AR at 34, 59, and the ALJ agreed to not make a decision until the records were received from Plaintiff, AR at 59, advising that without the missing records "[i]t's impossible at this point to verify anything that the claimant said today," AR at 68, with Plaintiff's counsel offering the provide the records "within one month." AR at 69. Further, by letter to Gaughan dated August 29, 2016, the ALJ granted a request to extend the submission deadline for the additional evidence to September 27, 2016, and specifically identified the additional missing records discussed at the administrative hearing including records pertaining to the period after July 29, 2014 from Drs. Vazquez and Perry of Urban Family Practice, after May 11, 2014 from Dr. Napoli of the Monsignor Carr Clinic, after May 20, 2014 from Catholic Charities of Buffalo, after June 11, 2014 from Dr. Sciandra, and all hospital records, including for mental stays, after June 25, 2009, AR at 229, but no such records were ever received. [8] Relevantly, the

---

[8] The ALJ also requested records dated after June 25, 2009 from Dr. Quasem, and after March 12, 2014 from Dr. Gayles, but it is not clear from the record who these doctors are.

burden is on Plaintiff to provide evidence proving she is disabled, 20 C.F.R. § 404.1512(a). Nevertheless, unless the record evidence is sufficient for the ALJ to make a disability determination, the ALJ, in light of the non-adversarial nature of a disability benefits proceeding, must take affirmative steps to develop the record to close gaps even when the claimant is represented by counsel. *See Grimes v. Berryhill*, 2019 WL 2511130, at * 5 (W.D.N.Y. June 18, 2019) (citing *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding.'" (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)))). Here, near the end of the administrative hearing, after Gaughan advised he would provide the relevant medical records, the ALJ advised that "I will not make a decision - - until I get all those documents in this case. It's impossible at this point to verify anything that the claimant said today." AR at 68-69. Despite admitting the record did not permit a credibility finding, the ALJ, in his decision, specifically made a credibility determination that Plaintiff's statements at the administrative hearing were not entirely consistent with the medical and other evidence in the record. AR at 16.

Given that the undisputed medical evidence in the record, much of which is set forth in the Facts, *supra*, at 4-9, largely points toward Plaintiff having serious mental health issues, including homicidal ideation, violent outbursts, and assaultive behavior,[9]

---

[9] The court notes the missing records may establish that Plaintiff meets the criteria for disability under the relevant Listing Impairment set forth at 20 C.F.R. Pt. 404, Subpt. P, Appx. 1 § 12.03 for schizophrenic, paranoid and other psychotic disorders.

17

as well as such physical issues as COPD, diabetes, and PAP, there are sufficiently obvious gaps in the record such that it was error for the ALJ to render his opinion without obtaining the missing records that he himself identified as discussed at the hearing but yet are missing from the administrative record. *See* AR at 229 (ALJ's letter dated August 29, 2016, to Gaughan granting extension of time to submit specific ally identified records).

The matter thus is REMANDED for further administrative proceedings, including obtaining the missing medical records identified,[10] as well as a new hearing.[11] Moreover, upon remand, the ALJ should consider the SSA's guidance that when considering a claimant's noncompliance with treatment, where such treatment is prescribed for a mental impairment affecting judgment, reality testing, or orientation, "an individual may not be aware that he or she has a disorder that requires treatment." SSR 16-3p that SSR 16-3p, 2017 WL 5180304, at *9-10 (Oct. 25, 2017). Given Plaintiff's repeated diagnoses of a schizoaffective disorder and dementia, SSR 16-3p is particularly relevant.

Moreover, mindful of the often painfully slow process by which disability determination are made, the Second Circuit instructs that some evaluation of relative hardship to a claimant of further delay should be considered, *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004), and district courts may therefore "set a time limit for action by the administrative tribunal, and this is often done." *Zambrano v. Califano*, 651 F.2d

---

[10] The court does not comment on whether the ALJ must invoke his authority pursuant to 42 U.S.C. § 405(d) and (e), to subpoena the records, which the ALJ himself identified in his August 29, 2016 letter to Plaintiff's then counsel, AR at 229, and to enforce such subpoena.

[11] Remand to obtain a physical or mental health RFC assessment is not likely to result in relevant evidence because Plaintiff's last insured date was December 31, 2015, more than three years ago, and Plaintiff did not apply for Supplemental Security Income under Title XVI, for which she had until the date of the ALJ's hearing decision to establish disability.

842, 844 (2d Cir. 1981). In the instant case, Plaintiff filed her initial application for disability benefits on March 31, 2014. As it has been more than five years since Plaintiff first filed her disability benefits application, further delay for remand is a hardship Plaintiff should not bear. Accordingly, upon remand, the Commissioner is required to complete the additional proceedings related to Plaintiff's claim within 120 days of the filing of this Decision and Order. *See Dambrowski v. Astrue*, 590 F.Supp.2d 579, 588 (S.D.N.Y. 2008) (imposing 120-day time limit for subsequent proceedings where five years had elapsed since the plaintiff filed his application).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 8) is GRANTED; Defendant's Motion (Dkt. 13) is DENIED; the matter is REMANDED for further administrative proceedings in accordance with this Decision and Order. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:   June 20th, 2019
         Buffalo, New York